IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00274-WYD-CBS

JULIA MORGAN,
    Plaintiff,
v.

GOODWILL INDUSTRIES OF DENVER, INC.,
    Defendant.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on "Defendant's Motion for Summary Judgment Dismissing All of Plaintiff's Claims." Pursuant to the Amended Order of Reference dated February 3, 2012 (Doc. # 4) and the memorandum dated May 1, 2013 (Doc. # 15), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, the Declarations and exhibits, Defendant's Reply (filed June 7, 2013) (Doc. # 18), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

Proceeding *pro se*, Ms. Morgan initiated this lawsuit on February 1, 2012, alleging jurisdiction based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, and other statutes and regulations. (*See* Complaint (Doc. # 1) at 1-2 of 10). Her claims arose from her employment with Goodwill Industries of Denver ("Goodwill"), a non-profit Colorado corporation that operates a retail store located at 1450 S. Wadsworth Boulevard, Lakewood, Colorado ("S. Wadsworth Store"), among others. Ms. Morgan alleges five claims for: (1) discrimination based on a knee injury or an unidentified "cognitive disability"; (2) retaliation for filing a complaint with the EEOC; (3) retaliation for filing complaints with "government regulation agencies"; (4) reverse discrimination based on her "white" race, and (5) retaliation for her opposition to "payroll practices." (*See id.* at 2-5 of 10). She seeks injunctive and monetary relief. (*See id.* at 6 of 10).

II.     Standard of Review

Defendant moves pursuant to Fed. R. Civ. P. 56 for summary judgment on all of the claims in the Complaint. "Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." *Montgomery v. Board of County Commissioners of Douglas County, Colorado*, 637 F. Supp. 2d 934, 939 (D. Colo. 2009) (internal quotation marks and citations omitted).

> When applying this standard, the court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. All doubts must be resolved in favor of the existence of triable issues of fact.
> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Id.* (internal quotation marks and citations omitted).

Ms. Morgan has not filed a response to Goodwill's Motion. On May 1, 2013, the court directed Ms. Morgan to file any response she had to the Motion on or before May 31, 2013. (*See* Order (Doc. # 16)). The court's records do not reflect that Ms. Morgan's copy of the court's Order was returned in the mail as undeliverable. Ms. Morgan neither sought an extension of time to respond nor filed a response. The Federal Rules of Civil Procedure specifically contemplate the consequences of Ms. Morgan's failure to oppose the summary judgment motion:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided by this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e). "If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial

burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Murray v. City of Tahlequah, Oklahoma*, 312 F.3d 1196, 1200 (10th Cir. 2002). *See also Armstrong v. Swanson*, 2009 WL 1938793 at * 7 (D. Colo. July 2, 2009) ("When a party with the burden of proof fails to respond to a motion for summary judgment, the motion is not reflexively granted; rather, the Court simply deems the non-movant to have waived the opportunity to assert any additional facts and examines whether the facts asserted by the movant warrant a trial or permit entry of judgment as a matter of law.") (citation omitted); *Barton v. City and County of Denver*, 432 F. Supp. 2d 1178, 1188 (D. Colo. 2006) (although plaintiff's failure to make a substantive response constituted a confession of facts asserted by defendants, it remained incumbent upon the court to make the specific determinations required under Rule 56(c)).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Id.*, at n. 3 (citations omitted). However, the court cannot be a pro se litigant's advocate. *Yang v. Archuleta*, 525 F. 3d 925, 927 n. 1 (10th Cir. 2008).

III.   Analysis

At all times relevant to the Complaint, Ms. Morgan was employed by Goodwill in Colorado. (*See* Doc. # 1 at ¶ 5). On October 11, 2008, Goodwill hired Ms. Morgan as a Cashier at the S. Wadsworth Store. (*See* Declaration of Lynn Louvar, Exhibit A to Defendant's Motion (Doc. # 14-6) at ¶ 8; Personnel Action Request, Exhibit C to Defendant's Motion (Doc. # 14-8)). Ms. Morgan is still employed by Goodwill. (*See* Doc. # 14-6 at ¶ 14; Deposition of Julia Morgan, Exhibit F to Defendant's Motion (Doc. # 14-11) at 24 of 25; Answer to Request for Admission No. 1 (Doc. # 14-28 at 18 of 25). When she was hired, Ms. Morgan signed Goodwill's Americans with Disability Act Employee Statement and an Acknowledgment Receipt of the Employee Handbook. (*See* Doc. # 14-6 at ¶ 10; Exhibits D, E to Defendant's Motion (Docs. # 14-9, # 14-10). Ms. Morgan applied

for and Goodwill promoted her to Lead Cashier on November 22, 2008.  (*See* Application for Employment, Exhibit T to Defendant's Motion (Doc. # 14-29);  Personnel Action Request, Exhibit V to Defendant's Motion (Doc. # 14-31); Doc. # 14-6 at ¶ 12).

On April 8, 2010, Ms. Morgan tripped on her own feet while walking through the store and injured her right knee.  (*See* HealthONE Occupational Medicine Centers Initial Evaluation, Exhibit G to Defendant's Motion (Doc. # 14-15);  Workers' Compensation – First Report of Injury, Exhibit H to Defendant's Motion (Doc. # 14-16);  Declaration of Nora Rimando, Exhibit I to Defendant's Motion (Doc. # 14-17) at ¶ 5;  Declaration of Ed Serpas, Exhibit Q to Defendant's Motion (Doc. # 14-25) at ¶ 9).  Ms. Morgan entered the Workers' Compensation Return-To-Work Program and returned to work on April 10, 2010, two days after her injury. (*See* Employee Time Sheet Report, Exhibit J to Defendant's Motion (Doc. # 14-18) at 16 of 25;  Exhibit K to Defendant's Motion (Doc. 14-19); Doc. # 14-6 at ¶ 11; Doc. # 14-17 at ¶ 6;  Doc. # 14-25 at ¶ 10).  Ms. Morgan worked under a Temporary Modified Duty Assignment Agreement that began on April 9, 2010.  (*See* Exhibit L to Defendant's Motion (Doc. # 14-20);  Doc. # 14-17 at ¶ 10).

Ms. Morgan underwent anterior cruciate ligament ("ACL") surgery for her right knee on June 10, 2010.  (*See* HealthONE Occupational Medicine Centers Interim Summary, Exhibit M to Defendant's Motion (Doc. # 14-21); Doc. # 14-17 at ¶ 7; Doc. # 14-25 at ¶ 11).  Goodwill paid for the surgery.  (*See* Doc. # 14-17 at ¶ 9).  Ms. Morgan was on leave from work for two weeks, from June 10 until June 25, 2010.  (*See* Physician's Report of Worker's Compensation Injury dated June 18, 2010, Exhibit N to Defendant's Motion (Doc. # 14-22); Physician's Report of Worker's Compensation Injury dated June 25, 2010, Exhibit O to Defendant's Motion (Doc. # 14-23); Doc. # 14-17 at ¶ 8).  Ms. Morgan returned to work on June 26, 2010 and worked under a Temporary Modified Duty Assignment Agreement that commenced on June 28, 2010.  (*See* Temporary Modified Duty Assignment Agreement, Exhibit P to Defendants Motion (Doc. # 14-24); Doc. # 14-17 at ¶ 11;  Doc. # 14-25 at ¶ 12).

On July 6, 2010, Ms. Morgan was permitted to work sitting in a chair with a back rest.  (*See* Doc. # 14-24 at 2 of 19).  On September 27, 2010, Ms. Morgan no longer needed to use a chair and resumed her responsibilities as a Lead Cashier.  (*See* Doc. # 14-17 at ¶ 15;  Doc. # 14-25 at ¶ 16).

On November 15, 2010, she returned to regular duty with no restrictions.  (*See* HealthONE Occupational Medicine Centers Discharge Summary, Exhibit R to Defendant's Motion (Doc. # 14-26);  Doc. # 14-25 at ¶ 16; Doc. # 14-17 at ¶ 16).

A.      First Claim for Relief for Discrimination Based on a Disability

In her First Claim for Relief, Ms. Morgan alleges that Goodwill did not make reasonable accommodation for her disabilities, which included her knee injury and an unidentified "cognitive disability."  (*See* Doc. # 1 at 3 of 10).  The ADA prohibits covered employers from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).  Discrimination claims brought under the ADA follow the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Carter v. Pathfinder Energy Services, Inc.*, 662 F.3d 1134, 1141 (10th Cir. 2011) (citation omitted).  "To state a prima facie case for discrimination under the ADA, [Ms. Morgan] must establish that (1) she is disabled, (2) she was qualified, with or without reasonable accommodation, to perform the essential functions of her job, and (3) her employer discriminated against her because of her disability."  *Robert v. Board of County Comm'rs*, 691 F.3d 1211, 1216 (10th Cir. 2012).  Ms. Morgan bears the burden of raising a genuine issue of material fact on each element of her prima facie case.  *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 495 (10th Cir. 2000).

Goodwill argues that Ms. Morgan cannot prove any of the three elements of a *prima facie* case.  Regarding the first element of a *prima facie* case, Goodwill argues that Ms. Morgan was not disabled.  The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;  (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))."  42 U.S.C. § 12102(1)).  Ms. Morgan alleges that she was disabled and/or regarded as disabled under subsections (A) and (C).

1.      ACL Injury

A court is required to undertake a three-step analysis under subsection (A).  *Doyal*, 213 F.3d

at 495. "First, the court must determine whether the plaintiff has an impairment." *Id.* Second, the court must identify the life activity upon which the plaintiff relies and determine whether it constitutes a major life activity under the ADA." *Id.* "Third, the court asks whether the impairment substantially limited the major life activity." *Id. See also Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003) ("First, the plaintiff must have a recognized impairment; second, the plaintiff must identify one or more appropriate major life activities; and third, the plaintiff must show that the impairment substantially limits one or more of those activities.").

"Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195 (2002). A "major life activity" is not statutorily defined, but both the Equal Employment Opportunity Commission ("EEOC") and the courts have defined the term as including "caring for oneself, performing manual tasks, walking, seeing, breathing, learning, and working." *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 610 n. 11 (10th Cir. 1998) (citing 29 C.F.R. § 1630.2(i)). *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1165 n. 5 (10th Cir. 1999) (*en banc*) (EEOC's interpretative guidance of ADA regulations given controlling weight) (citations omitted). Whether a plaintiff has an impairment under the ADA and whether the identified activity is a major life activity are questions of law for the court. *Doebele*, 342 F.3d at 1129. Although the question of whether an impairment is substantially limiting is ordinarily a factual question for a jury, it may be evaluated by the court on a motion for summary judgment. *Id.* at 1130 n. 5; *Bristol v. Bd. of County Comm'rs*, 281 F.3d 1148, 1161 n. 5 (10th Cir. 2002), *vacated in part on other grounds*, 312 F.3d 1213 (10th Cir. 2002) (*en banc*).

First, Ms. Morgan's temporary physical limitations and work restrictions due to her ACL surgery and rehabilitation do not establish that she had an impairment. Courts have determined that an employee is not disabled where the impairment was temporary or short-term. *See, e.g., Roush v. Weastec, Inc.*, 96 F.3d 840 (6th Cir. 1996) (determining that plaintiff's kidney condition that resulted in medical leaves of absence for over 40 weeks per year for two consecutive years and three months the third year was temporary, not substantially limiting and, therefore, not a disability under the ADA); *Sanders v. Arneson Products, Inc.*, 91 F.3d 1351 (9th Cir. 1996) (holding that

6

employee's temporary psychological impairment which lasted for less than four months was of insufficient duration to constitute disability under ADA); *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (finding ankle problems attributable to bone spurs, ligament damage, and gout were neither chronic nor severe enough to constitute a disability under the ADA); *Blanton v. Winston Printing Company*, 868 F. Supp. 804, 808 (M.D. N.C. 1994) (holding that knee injury of temporary duration with minimal residual effects could not be the basis for a viable claim under the ADA). "It is clear that a temporary disability does not meet the standards of the ADA; rather, [t]he impairment's impact must . . . be permanent or long term." *Prathan v. Autoliv ASP, Inc.*, No. 03-4255, 117 F. App'x 650, 651 (10th Cir. Nov. 15, 2004) (noting there was no medical evidence in the record that Plaintiff's disability "was anything other than temporary") (internal quotation marks and citation omitted). *See also Cobey v. Green*, 424 Fed. App'x 209, 212 (4th Cir.2011) (granting summary judgment for movant where medical records indicated that claimant's physical limitations, including standing for long periods of time, were only temporary); *Borgialli v. Thunder Basin Coal Co.*, 235 F.3d 1284, 1290 (10th Cir. 2000) ("The ADA was not designed to apply to temporary conditions.") (citation omitted).

More specifically, "[t]emporary disability while recuperating from surgery is generally not considered a disability under the ADA." *Peoples v. Langley/Empire Candle Co.*, 2012 WL 171340, *2 (D. Kan. Jan. 20, 2012) (finding hernia repair surgery is not a disability under the ADA) (citing 42 U.S.C. § 12102(2), (3)(B). *See also Blackburn v. Trs. of Guilford Tech. Comty. Coll.*, 733 F.Supp. 2d 659, 663 n. 3 (M.D.N.C. 2010) ("Ordinarily, a temporary impairment due to an injury or illness, including recuperation from surgery, is not sufficient to qualify as a disability under the ADA."); *Rebarchek v. Farmers Co-op. Elevator & Mercantile Ass'n*, 60 F.Supp.2d 1145, 1151–52 (D. Kan. 1999) (holding that employee's back injury was not an ADA "disability"; although back injury required surgery and employee was given certain restrictions while recovering from surgery, there was no evidence that his restrictions were expected to be permanent or that his condition was expected to result in a permanent or long-term impairment of his ability to engage in major life activities)); *Zurenda v. Cardiology Associates, P.C.*, 2012 WL 1801740, *8 (N.D.N.Y. May 16, 2012) (finding that plaintiff's temporary disability due to knee surgery does not trigger protections under

the ADA).

Even more specifically, courts have found that ACL injuries do not render a person disabled under the ADA. *See Clark v. Western Tidewater Regional Jail Authority*, 2012 WL 253108, *7 (E.D.Va. Jan. 26, 2012) (finding that plaintiff's ACL injury did not render her disabled under the ADA); *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 513 (E.D.Pa. 2012) (finding allegations of impairment after surgery for a torn ACL did not rise to the level necessary to infer any disability under the ADA, as modified by the ADA Amendment Act of 2008 ("ADAAA")).

Here, the evidence shows that Ms. Morgan's impairment was of limited duration and had no permanent or long term impact. Ms. Morgan had temporary work restrictions for five months related to her ACL injury. (*See* Doc. # 14-17 at ¶¶ 5-11, 15-16, Doc. # 14-19, Doc. # 14-20, Doc. # 14-21, Doc. # 14-22, Doc. # 14-23, Doc. # 14-24 at 1-7, 9-16, 19 of 19, Doc. # 14-25 at ¶¶ 9-12, 15-16, Doc. # 14-26). Goodwill fully complied with her temporary work restrictions. (*See* Doc. # 14-13 at 3-5 of 25). Ms. Morgan reached maximum medical improvement and on November 15, 2010, she returned to regular duty as a Lead Cashier with no work restrictions. (*See* Doc. # 14-12 at 24-25 of 25, Doc. # 14-26).

Nor has Ms. Morgan identified any major life activities that she contends were impaired. A plaintiff must identify the activity that he claims is impaired and establish that it constitutes a major life activity. *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002). Ms. Morgan has not demonstrated that the temporary restrictions due to her ACL injury constituted an impairment that substantially limited a major life activity. In sum, Ms. Morgan does not state a prima facie case for discrimination under the ADA.

2.    "Cognitive Disability"

Ms. Morgan also alleges in her First Claim for Relief that she has a "cognitive disability." While she alleges that her "cognitive disability" is an impairment under the ADA, Ms. Morgan merely generally alleges cognitive impairments without producing probative evidence. Ms. Morgan believes her "cognitive disability" is a "traumatic brain injury." (*See* Doc. # 14-11 at 6-7, 77-91). She has never consulted a medical professional, had a CT Scan or other brain scan, or received

a diagnosis regarding any "cognitive disability" "traumatic brain injury." (*See* Doc. # 14-11 at 2, 23-25 of 25). Ms. Morgan alleges that she informed Goodwill employees in March 2010 that she had a "cognitive disability." (*See* Doc. # 14-11 at 25 of 25, Doc. # 14-12 at 12-14 of 25; Doc. # 14-13 at 14-16 of 25). While she initialed Goodwill's policy regarding submission of a "Request for Reasonable Accommodation" form, Ms. Morgan never submitted a Request for Reasonable Accommodation form or otherwise requested accommodation for any alleged disability. (*See* Doc. # 14-6 at ¶¶ 10, 23-24; Doc. # 14-12 at 14-15, 17-18, 24 of 25, Doc. # 14-17 at ¶¶ 18, 20, Doc. # 14-29, Doc. # 14-30, Doc. # 14-31, Doc. # 14-37, Doc. # 14-44). Ms. Morgan represented that she could perform the functions of the jobs she performed for Goodwill and she in fact performed those job functions. (*See* Doc. # 14-9, Doc. # 14-11 at 21 of 25, Doc. # 14-12 at 7-8, 18-19 of 25, Doc. # 14-14 at 7 of 17, Doc. # 14-17 at ¶ 15-16).

There is insufficient evidence in the record to show Ms. Morgan suffers from the "cognitive disability" she alleges. The record contains nothing more than Ms. Morgan's conclusory allegations of her personal belief and her statements to other employees that she has a "cognitive disability." These allegations are insufficient to create a record of disability sufficient to overcome summary judgment, especially when considered together with Ms. Morgan's failure to indicate on Goodwill's forms that she had a disability, the lack of any medical diagnosis or documentation that she suffered from such a condition, her medical release from any work restrictions, her representations when applying for her positions at Goodwill that she could perform the functions of those jobs, and her actual performance of those job functions. *See, e.g., Brettler v. Purdue University*, 408 F. Supp. 2d 640, 663-64 (N.D. Ind. 2006) (granting employer's motion for summary judgment where plaintiff failed to provide any medical records or affidavits establishing any impairment other than the plaintiff's self-serving affidavit that he has a "narcoleptic condition," and "intellectual disability"). Ms. Morgan's alleged "cognitive disability" does not constitute a mental impairment that establishes a prima facie case under the ADA.

As the evidence fails to show that Ms. Morgan was disabled, she fails to establish the first element of a prima facie case and no genuine dispute of material fact exists as to whether Goodwill discriminated against her on the basis of a disability.

### 3. Regarded As Disabled

Ms. Morgan also alleges that she was regarded as disabled under 42 U.S.C. § 12102(1)(C). Goodwill argues that Ms. Morgan was not regarded as disabled under prong (C).

> For purposes of paragraph (1)(C):
> (A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.
> (B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

42 U.S.C. § 12102(3). In the Tenth Circuit, "[a] person is regarded as disabled when (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1219 (10th Cir. 2010) (internal quotation marks and citation omitted). "In both cases, it is necessary that [the employer] entertain misperceptions about the individual-it must believe either that [the individual] has a substantially limiting impairment that [the individual] does not have or that [the individual] has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 489 (1999), *superseded by statute on other grounds*, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). *See also Dillon v. Mountain Coal Co., L.L.C.*, 569 F.3d 1215, 1218 (10th Cir. 2009) ("a plaintiff must show that an employer has mistaken beliefs about the plaintiff's abilities . . . .") (internal quotation marks and citations omitted). The court's "focus is on an employer's subjective state of mind: did the employer mistakenly believe that the plaintiff was substantially limited in performing a major life activity?" *Justice v. Crown Cork and Seal Co., Inc.*, 527 F.3d 1080, 1086 (10th Cir. 2008) (citation omitted).

First, Ms. Morgan's claim fails to the extent she alleges that Goodwill regarded her as disabled based on her ACL injury. She could not be regarded as disabled for an injury that was transitory and minor. *See* 42 U.S.C. § 12102(3)(B). Ms. Morgan does not dispute that her injury and recovery had a limited duration. The evidence shows that Goodwill viewed Ms. Morgan's injury

as temporary. *See Delgado v. Tom Kelly & Assocs., Inc.*, No. 06-CV-0004-CVE-PJC, 2006 WL 3762093, at * 10 (N.D. Okla. Dec. 20, 2006) (plaintiff's employer did not regard the plaintiff as disabled because the evidence showed that the employer viewed any impairment as temporary). Ms. Morgan states that participation in Goodwill's Return-To-Work Program and Temporary Modified Duty Assignment Agreements demonstrate that Goodwill regarded her as disabled. (*See* Doc. # 14-13 at 11, 13 of 25). The Return-to-Work Program utilizes temporary work restrictions for work-related injuries and is not for employees with disabilities. (*See* Doc. # 14-17 at ¶ 4, Workers' Compensation Return-To-Work Program Memorandum, Exhibit K to Defendant's Motion (Doc. # 14-19)). Goodwill acknowledged Ms. Morgan's temporary work restrictions and treated her accordingly. An employer's knowledge of a medical condition and a request for leave does not establish that an employer perceived an employee as disabled. *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1219-20 (10th Cir. 2007). The record contains no evidence that Goodwill misperceived the extent of Ms. Morgan's limitation. Goodwill's perception of her limitation was not based on speculation, stereotype or myth, but on a doctor's written evaluations of her condition. *See Wooten*, 58 F.3d at 386. Ms. Morgan does not identify an impairment that substantially limited any major life activities or present evidence that Goodwill treated or regarded her as having an impairment that substantially limited any major life activities. *See Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d at 1220, 1230 (11th Cir. 1999) ("a perceived impairment must be believed to substantially limit a major life activity of the individual"); *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 192 (3d Cir. 1999) ("Liability attaches only to a mistake that causes the employer to perceive the employee as disabled within the meaning of ADA, *i.e.,* a mistake that leads the employer to think that the employee is substantially limited in a major life activity."). Her work restrictions were steadily reduced during the months after her surgery. (*See, e.g.,* Doc. # 14-13 at 12 of 25). She reached maximum medical improvement within seven months of her initial injury and returned to regular duty as a Lead Cashier with no work restrictions. Ms. Morgan fails to present sufficient evidence that Goodwill regarded her as being substantially limited in any major life activity based on her ACL surgery.

Ms. Morgan's claim also fails to the extent she alleges that Goodwill regarded her as

disabled with a "cognitive disability." While Ms. Morgan believes she has a "cognitive disability," she presents no evidence that Goodwill regarded her as substantially limited in any major life activity based on a "cognitive disability." Ms. Morgan does not identify any major life activity in which she is substantially limited or regarded as substantially limited. After notification Ms. Morgan's "cognitive disability," Goodwill hired her and promoted her. (See Doc. # 14-11 at 25 of 25, Doc. # 14-12 at 13 of 25). With Goodwill's knowledge and participation, Ms. Morgan worked as a Lead Cashier, a Cashier, and a Processor. (*See* Doc. # 14-11 at 23 of 25). The fact that Goodwill continued to employ Ms. Morgan for such work demonstrates that Goodwill believed Ms. Morgan was able to perform the essential duties of the jobs and did not regard her as having an impairment that substantially limited one or more major life activities. *See Eber v. Harris County Hosp. Dist.*, 130 F. Supp. 2d 847, 862-63 (S.D. Tex. 2001) (plaintiff failed to present a prima facie case under the ADA where he continued to hold all of his job responsibilities and duties and did not show that he suffered from an impairment). Ms. Morgan has not met her burden on summary judgment to present evidence from which a jury could conclude that Goodwill regarded her as substantially limited in a major life activity. Goodwill is entitled to summary judgment on her claim that she was regarded as disabled.

B.     Fourth Claim for Relief for Discrimination Based on Race and/or National Origin

In her Fourth Claim for Relief, Ms. Morgan alleges that in, violation of "Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5," she "was subjected to adverse employment conditions and disparate treatment for her efforts to oppose race and national origin bias that allowed preferential treatment to Hispanic/Latino looking persons and Hispanic/Latino individuals not afforded to similarly situated non Hispanic employees." (*See* Doc. # 1 at 5 of 10; *see also* Charge of Discrimination (Doc. # 14-44) at 1 of 2 ("I believe I have been discriminated against because of my race/national origin (White, European/non-Hispanic) . . . ."). Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

. . . " 42 U.S.C. § 2000e-2(a)(1).  "Title VII was enacted to ensure equality of employment opportunities and to eliminate those practices and devices that have historically discriminated on the basis of race, sex, color, religion, or national origin." *Livingston v. Roadway Exp., Inc.*, 802 F.2d 1250, 1251 (10th Cir. 1986) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Title VII prohibits discrimination against groups that historically have not been socially disfavored, as well as groups that historically have been socially disfavored.  *Livingston*, 802 F.2d at 1252 (citing *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 278-80 (1976)). "However, the presumptions in Title VII analysis that are valid when the plaintiff belongs to a disfavored group are not necessarily justified when the plaintiff is a member of an historically favored group." *Livingston*, 802 F.2d at 1252.  Ms. Morgan's allegation that she was subjected to disparate treatment because she is "White, European/non-Hispanic" is subject to a reverse discrimination analysis.  *Lyons v. Red Roof Inns, Inc.*, No. 04-1360, 130 F. App'x 957, 963 (10th Cir. May 12, 2005).

In order for a reverse discrimination claim to survive a summary judgment motion, the movant must first establish a prima facie case.  *Notari v. Denver Water Dept.*, 971 F.2d 585, 588 (10th Cir. 1992) (citing *McDonnell Douglas*, 411 U.S. at 792).  If the plaintiff carries this initial burden, the burden then shifts to the defendant to show a legitimate nondiscriminatory reason for the challenged employment decision.  *Notari*, 971 F.2d at 588.  If the defendant meets this burden, the burden then shifts back to the plaintiff to prove that the legitimate reasons were really a pretext for discrimination.  *Notari*, 971 F.2d at 588.

In a reverse discrimination case, the prima facie case is adjusted to reflect the reverse discrimination context of the lawsuit.  *Reynolds v. School Dist. No. 1, Denver , Colo.*, 69 F.3d 1523, 1534 (10th Cir. 1995).  *See also Livingston*, 802 F.2d at 1252 ("When a plaintiff who is a member of a favored group alleges disparate treatment, the courts have adjusted the prima facie case to reflect this specific context . . . .").  This adjustment requires the plaintiff to show either:  background circumstances which demonstrate that the defendant is that unusual employer who discriminates against the majority or, alternatively, that but for the plaintiff's status the challenged employment decision would not have occurred.  *See Adamson v. Multi-Cmty. Diversified Servs., Inc.*, 514 F.3d

1136, 1149 (10th Cir. 2008) ("When plaintiff is a member of a historically favored group, by contrast, an inference of invidious intent is warranted only when background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.") (citation omitted); *McGarry v. Board of County Com'rs of the County of Pitkin*, 175 F.3d 1193, 1199 (10th Cir. 1999) ("In addition, a plaintiff may recover if the plaintiff can demonstrate he or she is the victim of reverse discrimination by direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff."). "The plaintiff may proceed by relying on a version of the *McDonnell Douglas Corp. v. Green* burden-shifting analysis to test whether a person who is a member of a historically favored group is entitled to the McDonnell Douglas presumption of discrimination." *McGarry*, 175 F.3d at 1199 (citations omitted). The alternative approach "does not displace the *McDonnell Douglas* paradigm but simply provides an alternative basis upon which plaintiffs may satisfy their prima facie burden." *Notari*, 971 F.2d at 591. "[I]t is not enough, under this alternative formulation, for a plaintiff merely to allege that he was qualified and that someone with different characteristics was the beneficiary of the challenged employment decision. Instead, the plaintiff must allege and produce evidence to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred." *Notari*, 971 F.2d at 590.

Ms. Morgan fails to establish a prima facie case because she presents no evidence that Goodwill is the unusual employer who discriminates against the majority or that Goodwill treated similarly-situated non-white employees differently than her. "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Rivera v. City and County of Denver*, 365 F.3d 912, 922 (10th Cir. 2004) (internal quotation marks and citation omitted). In determining whether an employee is similarly situated to the plaintiff, "[a] court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees." *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000) (citation omitted).

Approximately ten Caucasian employees and six Hispanic employees worked with Ms.

Morgan at the South Wadsworth Store in 2010. (See Doc. # 14-6 at ¶ 25). Ms. Morgan's direct supervisor, Mr. Serpas, is Caucasian. (See Doc. # 14-25 at ¶ 3). She generally alleges that Goodwill did not take disciplinary action against Hispanic employees who engaged in behavior similar to hers. (See Doc. # 14-14 at 10-12 of 17). However, Ms. Morgan acknowledges that not all Hispanic and Caucasian employees were treated differently. (*See* Doc. # 14-14 at 11 of 17, *see also* Doc. # 14-25 at ¶ 39). The evidence indicates that Ms. Morgan was promoted to Lead Cashier on a timetable similar to other employees, both Hispanic and Caucasian. (*See* Doc. # 14-12 at 1-4 of 25). Ms. Morgan's work schedule was not significantly different than other employees' schedules. (*See* Doc. # 14-12 at 6-7 of 25, Weekly Employee Schedule, Exhibit X to Defendant's Motion (Doc. # 14-33), Doc. # 14-25 at ¶ 17). As all of the Cashiers and Lead Cashiers preferred to work the day shifts, Mr. Serpas rotated employees' shifts so that everyone had an opportunity to work day shifts. (See Doc. # 14-25 at ¶ 17). While Ms. Morgan and Ms. Burquez were both working as Lead Cashiers, from approximately April 2010 until October 2010, Ms. Burquez was scheduled for more of the undesirable closing shifts than Morgan. (*See* Doc. # 14-33). The responsibilities that Ms. Morgan complained about as inequitable, such as rearranging merchandise, rearranging display racks, were part of the essential job responsibilities of a Lead Cashier. (See Job Description, Exhibit W to Defendant's Motion, Doc. # 14-32). Ms. Burquez was terminated from her employment at Goodwill on February 5, 2011 for failing to report for her scheduled shifts. (*See* Doc. # 14-13 at 8-9 of 25, Doc. # 14-25 at ¶ 37, Personnel Action Request Form, Exhibit GG to Defendant's Motion (Doc. # 14-45)). While Ms. Morgan believes that other employees' attendance was not monitored in the same manner that her attendance was monitored, she does not provide specific evidence of dates or hours. (*See* Doc. # 14-13 at 20 of 25). She states only generally that two other employees received better training than she did, without providing any facts in support. (*See* Doc. # 14-14 at 4 of 17). In sum, Ms. Morgan fails to satisfy the first prong of a prima facie case because she does not establish background circumstances that "support the suspicion that the defendant is that unusual employer who discriminates against the majority," *Adamson*, 514 F.3d at 1149, or that any similarly-situated non-Caucasians were treated more favorably.

C.      Retaliation Claims

In the Second, Third, and Fifth Claims for Relief, Ms. Morgan alleges that she was demoted and "subjected to adverse employment conditions and disparate treatment" for filing "a formal complaint with the Denver Equal Employment Opportunity Commission on November 23, 2010," for opposing "discrimination about her disability, for utilizing Defendant's internal notification system and for contacting government regulation agencies," and "for her efforts to oppose Defendant's payroll practices which denied worker's wage compensation for time worked in violation of FLSA and Defendant's written policy. . . ." (*See* Doc. # 1 at 4-5 of 10).

The ADA makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). In order to establish a prima facie case of retaliation under the ADA, Ms. Morgan must demonstrate "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1051 (10th Cir. 2011) (internal quotation marks and citations omitted). Because Ms. Morgan offers no direct evidence of discrimination, the court analyzes her retaliation claim under the burden-shifting framework delineated in *McDonnell Douglas. Id.* Under this framework, a plaintiff must first make out a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. After the plaintiff has made the requisite showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* at 802–03. If the defendant proffers such a reason, the burden then shifts back to the plaintiff to show that the defendant's stated reasons are merely "pretextual." *Id.* at 804–05.

Ms. Morgan alleges that on October 7, 2010, she told Wendy Runquist, the Assistant Store Manager, that she would be filing a complaint with the EEOC. (*See* Doc. # 14-14 at 5 of 17). On October 9, 2010, Mr. Serpas demoted Ms. Morgan from a Lead Cashier to a Cashier because she was not willing to work until 9:30 p.m. to close the store. (*See* Personnel Action Request Form,

Exhibit Y to Defendant's Motion (Doc. # 14-37); Doc. # 14-25 at ¶ 21). After her demotion, Ms. Morgan filed an EEOC Charge of Discrimination on November 23, 2010. (*See* U.S. Equal Employment Opportunity Commission Intake Questionnaire, Exhibit EE to Defendant's Motion (Doc. # 14-43), EEOC Charge of Discrimination, Exhibit FF to Defendant's Motion (Doc. # 14-44)). Mr. Serpas received Ms. Morgan's Charge of Discrimination on or about November 23, 2010. (*See* Doc. # 14-25 at ¶ 32, Doc. # 14-44). Ms. Louvar received Ms. Morgan's Charge of Discrimination on or about December 1, 2010. (*See* Doc. # 14-6 at ¶ 16). The EEOC investigated and found no probable cause. (*See* Doc. # 14-6 at ¶ 15). Ms. Morgan told no one other than Ms. Runquist of her intention to file an EEOC complaint. (*See* Doc. # 14-14 at 5 of 17). Ms. Runquist was not a decision-maker in Ms. Morgan's demotion. (*See id.*; Doc. # 14-25 at ¶ 22). The decision-maker, Mr. Serpas, did not know that she intended to file a complaint with the EEOC. (*See* Doc. # 14-25 at ¶ 32). Ms. Morgan has not presented any evidence that Mr. Serpas and Ms. Louvar, the individuals who demoted her, were aware of any protected activity prior to October 9, 2010, the date she was demoted.

Ms. Morgan also filed a complaint with the Colorado Department of Labor and Employment ("CDLE") regarding "time shaving and wage theft." (*See* Doc. # 14-14 at 10 of 17). The CDLE conducted an audit of the S. Wadsworth Store on April 7, 2011 and made no adverse findings. (*See* Doc. # 14-6 at ¶¶ 18-19; Doc. # 14-14 at 10 of 17). Ms. Louvar did not know the audit was the result of a complaint filed by Ms. Morgan until Ms. Morgan filed her complaint in February 2012. (*See* Doc. # 14-6 at ¶ 18). Mr. Serpas never knew that Ms. Morgan made a complaint to the CDLE until this lawsuit commenced. (See Doc. # 14-25 at ¶ 33). In sum, Ms. Morgan cannot make out a prima facie case for her retaliation claims because she has not demonstrated a causal connection between the protected activity and a materially adverse action.

IV.   Conclusion

Ms. Morgan fails to meet her burden on summary judgment to establish a prima facie case

17

as to any of her claims.[1] Goodwill is entitled to summary judgment on Ms. Morgan's discrimination claim under the ADA, Ms. Morgan's claim of discrimination based on her race and/or national origin, and her claims for retaliation. Accordingly,

IT IS RECOMMENDED that "Defendant's Motion for Summary Judgment Dismissing All of Plaintiff's Claims" (filed April 30, 2013) (Doc. # 14) be GRANTED and summary judgment enter on the Complaint in favor of Defendant and against Plaintiff.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's

---

[1] As the court determines that Ms. Morgan has not established a prima facie as to any of her claims, it need not reach at this time Goodwill's additional arguments that she was not qualified to perform the Lead Cashier position and that she did not present evidence that Goodwill's legitimate, non-discriminatory reasons for its employment decisions were a pretext for discrimination.

order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 19th day of July, 2013.

BY THE COURT:


s/Craig B. Shaffer
United States Magistrate Judge